Frank AVERSA, Appellant,

v.

Anna T. AVERSA, Appellee.

No. 14454.

Court of Civil Appeals of Texas.

San Antonio.

June 8, 1966.

Rehearing Denied July 20, 1966.

Southers & Mendelsohn, Les Mendelsohn, San Antonio, for appellant.

Reid & Taylor, Robert P. Sims, San Antonio, for appellee.

CADENA, Justice.

This is an appeal by Frank Aversa from an order of a district court of Bexar County modifying a previous divorce decree and ordering appellant to contribute the sum of $100.00 per month toward the support of an unmarried nineteen-year-old son of appellant and his former wife, Anna T. Aversa, appellee.

■ Ordinarily, the power of a court in a divorce proceeding to enforce by appropriate order the parental obligation to support children of the marriage is limited to orders relating to the support of children who are under eighteen years of age. Art. 4639a, Vernon's Ann.Civ.St. The only authorization for the entry of an order compelling a divorced parent to support a child of the marriage who has attained his eighteenth birthday is found in Art. 4639a–1, Vernon's Ann.Civ.St. This statute authorizes a court to enter and enforce orders requiring support payments for a child above the age of eighteen if it is established by full and satisfactory evidence that (1) the child is unmarried; (2) the child is physically or mentally unsound and requires custodial care; (3) such child cannot adequately take care of, or provide for, himself; and (4) the child has no personal estate or income sufficient to provide for his reasonable and necessary care.

The evidence in this case is sufficient to establish that the son is unmarried, is mentally unsound, and has no personal estate or income. Appellant contends, however, that the trial court's finding that the boy requires custodial care is not supported by full and satisfactory evidence.

In November, 1964, the boy suffered what his mother described as a "mental breakdown." On December 28, 1964, he was admitted as a patient at the Adult Mental Health Clinic, which is operated as a part of the Texas State Hospital and Special Schools system in San Antonio. He was released from the clinic on February 26, 1965, but continues to report there for treatment as an out-patient.

Dr. Robert Rast, Chief Clinical Psychologist at the clinic, described the boy's condition as "schizophrenic reaction, paranoid type." The term "schizophrenic reaction," according to this witness, describes a form of mental disturbance characterized by a deterioration of a person's thinking and reasoning processes to the extent that such processes become so illogical, inappropriate and unreasonable that he loses contact with reality. The witness characterized the schizophrenic reaction in this case as "paranoid type" because it is accompanied by delusions of grandeur.

The boy's progress in response to treatment was described as "moderate to slow." However, his condition is not such as to require that he be placed in an institution.

It is the hope of the doctors that, at some time in the future, their treatment of the boy will progress to the point where his illogical thinking will be reduced to such an extent that he can be referred to an agency for vocational rehabilitation, so that he can be trained for employment in some field commensurate with his abilities. At the present time it is not possible for him

to venture into the employment market "and just get and hold a job" as most persons do. Much depends on the nature of the work and the attitude of the employer. The boy can retain employment only if it is in a special setting, such as that furnished by an organization known as "Goodwill Industries," where he would receive adequate supervision. Because of this mental condition, he cannot "live alone and be out from under the wing of his mother" and still "make it." He is incapable of managing his own money and financial affairs adequately, and requires supervision.

Since his release from the hospital, the boy has been unable to earn a livelihood, although he has attempted to support himself by working for a sign company, by selling television sets and by selling carpets. His job with the sign company lasted only two days, and his efforts as a salesman yielded no income whatever.

The mother testified that the boy is able, and is allowed, to leave his home, drive the family car, go out with male friends and have "dates" with female friends. There is no evidence that, as a result of his unsupervised social activities, he has ever created, or become involved in, situations with which he cannot cope.

■ While this evidence establishes that the boy is mentally ill and will, for some time, find it impossible, or, at least, extremely difficult, to support himself, it does not disclose a situation to which Art. 4639a–1 is applicable. The statute requires, in addition to evidence of a child's mental unsoundness and inability to support himself, that it be established by full and satisfactory evidence that the child requires "custodial care," and that he is financially unable to "provide for his reasonable and necessary care."

■ We have found no decision by any court in which an attempt has been made to define the phrase, "custodial care." Without creating additional problems by attempting a comprehensive definition of "custodial care," and without implying that the statute requires evidence showing a necessity that the child in question be placed in a hospital or other institution, we hold that evidence which merely shows that a child, because of mental illness, is unable to support himself and requires "supervision" in the management of his financial affairs is insufficient to show that such child requires "custodial care." Viewing the statute as a whole, it is reasonable to conclude that the Legislature had in mind a situation in which the child requires substantially that type of care which involves a degree of attention requiring more or less continuous personal supervision. The statute contemplates more than the furnishing of food, clothing and lodging. The custodial care which the child must require is such as is made necessary by his physical or mental infirmity, rather than by his lack of financial resources.

It appears, then, that the custodial care must be adapted to the physical or mental condition of the child and must involve, to some degree, the type of care which will conduce to the comfort of the child and will hasten the cure, or ameliorate the physical or mental illness, or help control it.

■ The requirement that the child must be financially unable to provide for his necessary and reasonable care must, when read in context, refer to the special care called for by his illness. There is nothing in the record to indicate that the child in this case requires any more of his mother's time and attention than do her five other children, two of whom are more than eighteen years of age. The record does disclose that appellee, the boy's mother, gave up her employment, but her testimony was to the effect that she did so because the job made her nervous. Nowhere in her testimony is there even a hint that the boy's need for care and attention in any way influenced her in her decision to cease working.

Under these circumstances, it must be concluded that the trial court's finding that the boy in question requires "custodial care" is without support in the evidence.

The judgment of the trial court is reversed and judgment is here rendered in favor of appellant.